THE MOHAWK BANK and SMITH and others, (Executors of VAN NESS,) *against* BURROWS and others.

The attorney's or solicitor's lien for his *costs* does not affect the equitable right of *set-off* between the parties. The *lien* extends only to the clear balance resulting from the equity between the parties. But the attorney's or solicitor's *lien*, for costs recovered, will not be suspended, or satisfaction of the judgment delayed, until an unliquidated claim of the opposite party can be ascertained, and a balance finally struck between the parties.

PETITION of the plaintiffs, who are executors, stating, that by the decree of the 4th day of *April* last, it was ordered, that the bill, as to the defendant, *Burrows*, be dismissed, with costs. That it appears, by the pleadings and proofs, that the defendant, *B.*, is insolvent, and that on the 30th of *May*, 1817, *David Van Ness*, the testator, and the defendant, *B.*, became joint purchasers of the cotton factory, mentioned in the pleadings, and, to secure the purchase money, they gave, jointly, a bond and mortgage on the premises, to the *Mohawk Bank*, for 9669 dollars 76 cents, payable in eight equal annual instalments, with interest. That the premises, since the destruction of the factory by fire, would not sell for 1500 dollars. That since the decree aforesaid, the executors have been required to pay to the bank *the moiety* of principal and interest of the instalments which fell due on the 1st of *June*, 1820, 1821, and 1822, and *which the defendant, B., was bound to pay*, but did not, being insolvent. That the executors have so paid, on the 1st of *July* last, 2492 dollars 61 cents, to the bank. That three instalments are unpaid, and will become due in 1823, 1824, and 1825, and one half of each of them the defendant, *B.*, ought to pay ; and the estate of *Van Ness* will, no doubt, be obliged to pay the

*Sept. 28th.*

MOHAWK
BANK
v.
BURROWS.

whole of them. That the costs of the defendant, *B.*, in the above suit, are taxed at 132 dollars 70 cents. That the estate of *Van Ness* will be obliged to pay such costs, as the suit was instituted exclusively for the benefit of such estate; and the *Mohawk Bank* consented to have their names used as parties, under a stipulation that the same should be prosecuted at the risk of the estate as to costs. *Prayer*, that the costs be deducted from the amount which the executors of *Van Ness* have paid on the bond and mortgage aforesaid, and which the defendant, *B.*, ought to have paid.

*A. Van Vechten*, for the set-off, according to the prayer of the petition.

*L. Mitchill*, contra.

For the petition, were cited, 2 *H. Bl.* 440.  4 *Bos. & Pull.* 22.  8 *Johns. Rep.* 357.  13 *Johns. Rep.* 306.  2 *Atk.* 165.  15 *Vesey*, 72.  12 *Vesey*, 346.  14 *Johns. Rep.* 63.

Against the petition, were cited, 2 *B. & P.* 29.  8 *Term Rep.* 69.  4 *Term Rep.* 123.  2 *H. Bl.* 588.  2 *Caines' Rep.* 105.  8 *Johns. Rep.* 247.  3 *East*, 149.  8 *Tyng's Mass. Rep.* 451.

THE CHANCELLOR.  The doctrine of the Court of *Common Pleas*, and of the Court of *Chancery*, in *England*, and of the *Supreme Court* of this state, is, that the attorney's or solicitor's lien for costs does not prevent the parties from having their mutual demands arranged by set-off, as the equities between them shall require, without regard to the lien of the attorney or solicitor.

In *Vaughan* v. *Davies*, (2 *H. Bl.* 440.) *A.* obtained a verdict against *B.* for a small sum, and *B.* obtained a judg-

ment against *A.* for a large sum, and the Court permitted the verdict *and costs* recovered by *A.* to be deducted from the amount of the judgment of *B.*, notwithstanding *A.* was insolvent, and had no means of paying his attorney's bill, but by the sum for which he obtained a verdict, and notwithstanding that the attorney for *A.* had no fund to resort to for his costs but the sum recovered by his client. It was admitted, in that case, that the practice of the K. B. was different, and the equitable right of setting off the sum recovered in one action against that recovered in another, was always subject to the attorney's lien for his bill, and for which the case of *Mitchell* v. *Oldfield*, (4 *Term Rep.* 123.) was referred to.

This was a very strong case on the point, and it was, afterwards, followed in the cases of *Hall* v. *Ody*, (2 *B. & Pull.* 28.) and *Emden* v. *Dailey*, (4 *B. & Pull.* 22.) But in the first of these two last mentioned cases, Lord Ch. J. *Eldon* seemed to hesitate as to the practice, and observed, that " he found this to be the settled practice of the C. B. with much surprise, since it stood in direct contradiction to the practice of every other Court, as well as to the principles of justice. In the Court of Chancery, the same parties were often concerned in many suits, and he never knew the idea entertained of arranging the funds, until the respective attorneys were paid their costs." The other Judges of the C. B. dryly observed, that they had no objection to have the practice reconsidered; but *Rooke,* J. said, " It did not appear to him to be unfair as it stood at present. The attorney looks, in the first instance, to the personal security of his client, and if beyond that he can get any further security into his hands, it is a mere casual advantage." The last of these cases, was after Sir *James Mansfield* had succeeded as Ch. J. and the Court of *Common Pleas* adhered to their former practice as settled, and held, that the attorney's lien could not be allowed to interfere with the equitable arrangement of costs between the

1822.

MOHAWK BANK
v.
BURROWS.

1822.

MOHAWK
BANK
v.
BURROWS.

parties to the suit ; that the attorney acts upon the credit of his client, and his personal security for the payment of his costs, and that the Court always allowed applications of that kind.

In *Porter* v. *Lane*, (8 *Johns. Rep.* 357.) the Supreme Court of this state declared, that they adopted the rule of the C. B., and that the attorney's lien for his costs did not affect the equitable right of set-off between the parties.

The rule in Chancery is the same. In the case of *Vaughan* v. *Davies*, cited above, Mr. J. *Buller* observed, that a similar decision to this had taken place that very term in the Court of Chancery, in *Barton* v. *Etherington.* Lord *Hardwicke* had said, long before, (*Garish* v. *Donovan*, 2 *Atk.* 166.) that it was very reasonable that the costs which the plaintiff had to pay, on dismissing his bill, should be deducted out of the costs and damages which the plaintiff had recovered at law against the defendant, and for which the defendant had been taken in execution, and there remained. I have not seen any report of the decision alluded to by Mr. J. *Buller ;* but Lord *Eldon*, since he became Chancellor, has repeatedly admitted the Chancery rule to be the same with that of the C. B., which he so precipitately, and contrary to his usual discretion and accuracy, called in question when he was Ch. J. of that Court.

In *Taylor* v. *Popham*, (15 *Ves.* 79.) Lord Ch. *Eldon* stated, that he " had a strong notion that the doctrine of that Court has all along been, that where different demands arise in a cause, the costs should be arranged as the equities between the parties require, without considering the solicitor." And in the case *Ex parte Rhodes*, (15 *Ves.* 541.) he stated more decidedly the rule in Chancery. The right of set-off, he said, prevailed, in general cases, so as to interfere with the solicitor's lien upon the debt recovered. The Court of K. B. held, that the equity of set-off should not interfere with the lien. The Court

of Common Pleas, on the contrary, held, that the attorney can have no lien that will interfere with the equity between the parties; " and, my opinion is, that the practice of this Court does not interpose the lien further than upon the clear balance which is the result of the equity between the parties. This is proved by the whole form of our proceedings."

The practice which has been thus shown to exist, and to be established by such a preponderating weight of authority, must be deemed the rule in this Court; and the only pertinent inquiry is, whether the circumstances of this case warrant the application of the rule.

*Burrows*, in his answer to the bill, admitted, " that *Van Ness* and he purchased, on the 30th of *May*, 1817, the factory and lands belonging to it, for about 10,000 dollars; and that they gave their joint bond and mortgage to the *Mohawk Bank* for 9669 dollars and 76 cents, part of the purchase money. That he was owner of half the factory as a tenant in common, and that he made improvements on the factory to more than the amount of his half of the original purchase money secured by the mortgage. That when he purchased, it was an agreement between him and *Van Ness*, that the factory should be conducted, improved, and carried on at joint expense, and the defendant *B.* attempted to perform his part, and made repairs and improvements of great value, but *Van Ness* and his executors refused to join him in such expenses and improvements, to his great damage." It would appear from those charges, put forward in the answer, that the question of contribution between the executors of *Van Ness* and the defendant, *B.*, is quite unsettled, and the claim of the executors will be contested, and must undergo a course of judicial investigation, before it is established, and its extent ascertained. I believe none of the cases require a suspension of the operation of the attorney's or solicitor's lien upon the costs already recovered, until an unliquidated

1822.

MOHAWK
BANK
v.
BURROWS.

claim of the opposite party can be settled.    The claims on each side must be ascertained before the set-off can be admitted.    It would be unreasonable to delay the solicitor until the accounts between the parties can be stated, and the balance struck.    As was observed in the case of *Duncan* v. *Lyon*, (3 *Johns. Ch. Rep.* 360.) " one judgment may be set off against another ; but here is a demand on one side raised to a debt certain, and an uncertain claim on the other, and there is no case to warrant the delay of satisfaction of a judgment debt on one side, until an unsettled demand on the other is reduced to certainty, and in a condition to be set off."

On this ground, I am of opinion, that the prayer of the petition be denied.

Motion denied.