NICOLL and others, *appellants,* and NICOLL, *respondent.*

An attorney's *lien* for costs is no bar to a *bill in chancery* filed to obtain a *set-off,* nor is it a bar when the question arises on a *trial at law.*

The practice of the courts in respect to attorneys' liens *on motions* to set-off one judgment against another considered and commented upon.

APPEAL from chancery. The appellants held a judgment against the respondent for upwards of sixteen thousand dollars, rendered in 1829. In 1835, the respondent obtained a judgment against them for one hundred and sixty-six dollars and eighty-nine cents, the costs of an ejectment suit prosecuted by him against them. The appellants offered to allow the costs in part payment of the judgment in their favor, and required the respondent to give them a receipt for the same, which he refused to do. They thereupon filed a bill in chancery to *set-off* so much of their judgment as would satisfy the judgment in his favor, and prayed an *injunction* restraining the respondent from collecting the amount of his judgment. An injunction was accordingly issued, which was *dissolved* by the vice-chancellor of the

first circuit, on the application of the *attorney* for the respondent in the ejectment suit, who claimed that he had a *lien* upon the judgment for his costs, and gave notice of such application *in person*, and as *solicitor* for the respondent. The order of the vice-chancellor was *affirmed* by the chancellor on appeal to him, and from the decretal order of the chancellor the appellants appealed to this court.

The case here was argued by

*M. T. Reynolds*, for the appellants.

*C. B. Moore*, for the respondent.

The following opinion was delivered :

By Mr. Justice COWEN. The only question in this case is, whether the *attorney* had a *lien* upon the judgment which took preference of the right of *set-off* on the part of the defendants in the ejectment suit. The chancellor allowed the claim of the attorney, and denied the *set-off*. On a motion to the supreme court, the set-off would have been ordered without regard to the attorney's claim. Such has been the practice from 1811, when *Porter* v. *Lane* was decided, 8 Johns. R. 357, until 1835. *The People ex rel. Manning* v. *The New-York Com. Pleas*, 13 Wendell, 649. Such also was the practice of the court of chancery as declared by Chancellor Kent, in *The Mohawk Bank* v. *Burrows*, 6 Johns. Ch. R. 317, A. D. 1822. It continued till 1829, when, in *Dunkin* v. *Vandenbergh*, 1 Paige, 622, the present chancellor reconsidered the point, and held that the attorney's lien should be preferred.

In England the practice is different in different courts. In the *King's bench* the lien was allowed ; in the *common pleas* it was denied ; in the court of chancery it appears to have been quite doubtful whether, on motion, the court would set-off one judgment against another in different causes even in that court, though they were in the constant habit of setting off interlocutory costs in the same cause. *Wright* v. *Miller*, 1 Simon & Stu. 266. But so far as

Lord Eldon has spoken to the rule, while he was chancellor, we are led to suppose that he preferred the rule of the common pleas. Per Baron Hullock in *Lane* v. *Pierce*, 12 Price, 742. In the case cited the question came before the exchequer, and it appears from what was said by Baron Hullock, that the cases in that court were conflicting. But there was now a strong leaning among all the barons in favor of the practice of the common pleas. Baron Garrow laid down the rule much as it has always been understood and applied in the supreme court. "The principle of the attorney's lien," says he, "I have always understood to be this ; that parties shall not collude together to defeat the attorney's claim, by settling behind his back to his injury and loss ; that if they will do so, it shall be at their peril ; and the court will protect him." See *Brooks* v. *Bourne*, 1 Price, 72. Looking at the force of English authority there were eight out of the twelve judges together with Lord Eldon, opposed to the lien ; and the practice has been uniform in the courts of this state for many years. Yet it is but matter of practice on motion upon which each court acts according to its best judgment, without any common superior. Such summary decisions of course cannot be reviewed by writ of error, nor I suppose by appeal. The judges of the English courts of common law, finding the discordance in practice to be inconvenient, assembled in Hilary term, 1832, and all agreed to allow the attorney's lien, and pursuant to the statute for promoting uniformity in their practice, they adopted a rule to that effect binding on all the courts. 4 Bligh, N. S. 604. 1 Dowl. Pr. Cas. 196, and 3 id. 638.

But the practice of courts is one thing. While each is left to prescribe rules for the orderly conduct of its own business, a different question arises when they are called upon to apply the *statute of set-off*. It lies at the foundation of the attorney's lien even in the King's bench where it is protected to the greatest extent, that the court have a discretion to grant or refuse the set-off on motion, *Mitchell* v. *Oldfield*, 4 T. R. 123 ; but when we come to a bill filed or a trial at law, there is no discretion. On motion

the courts proceed without the statute ; on bill filed or a trial at law, they are within it, and must obey it. 4 Burr. 2221. No authority can be produced, where the attorney's lien was ever recognized on a trial at law as barring a set-off, the right to which would be otherwise perfect. I admit he is to be protected against fraud, on a trial at law. Such was the case of *Martin* v. *Hawks,* 15 Johns. R. 406. That was the case of a fraudulent discharge by a client. The court said they would protect an attorney as they would an assignee. No case can be produced, where on bill filed this lien has been let in to obstruct a set-off, until *Gridley* v. *Garrison* decided by the present chancellor, 4 Paige, 647. *Equitas sequitur legem,* whether the set-off be within the words or the spirit of the act, *Taylor* v. *Okey,* 13 Ves. 180. The rules of practice are many times arbitrary, but when a statute comes in, there is a common principle by which all courts must abide ; and which, I think, has been departed from by this decree.

I am, therefore, of opinion that the decree should be reversed ; and that the proceedings be remitted with directions to allow the set-off.

On the question being put, *Shall this decree be reversed?* the members of the court voted as follows :

*In the affirmative*—The PRESIDENT of the Senate, the CHIEF JUSTICE, *Justices* BRONSON and COWEN, and *Senators* BECKWITH, FOX, HUNTINGTON, J. P. JONES, LACEY, LAWYER, LOOMIS, SEGER, SPRAKER, and WILLES—14.

*In the negative*—*Senators* ARMSTRONG, J. BEARDSLEY, L. BEARDSLEY, DOWNING, EDWARDS, GANESVOORT, MAISON, and STERLING—8.

Whereupon the decree of the chancellor was *reversed.*