JOSEPHINE A. BEECHER et al., as Executors of JAMES C. BEECHER, Deceased, et al., Appellants, *v.* PETER A. VOGT MANUFACTURING COMPANY et al., Respondents.

**Attorney and client — judgment — set-off — lien of attorney upon judgment in his client's favor — such judgment cannot be set off against another except subject to the lien of the attorney.**

Under the statute (Judiciary Law [Cons. Laws, ch. 30], § 475) an attorney has a lien upon his client's cause of action which attaches to a judgment in his client's favor " and the proceeds thereof in whosoever hands they may come," and where judgment debtors.have purchased a judgment against their judgment creditor and seek, in an action in equity, to have the judgment assigned to them set off against the judgment which they owe, such set-off cannot be allowed except subject to the lien of the attorneys of the party who obtained the judgment against them.

*Beecher* v. *Vogt Manufacturing Co.*, 184 App. Div. 962, affirmed.

(Argued December 10, 1919; decided January 6, 1920.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 10, 1918, affirming a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Vernon Cole* for appellants. The rights of the plaintiffs to offset the judgment are superior to the rights of the defendants Stanley & Gidley by way of attorneys' lien. (*Manning* v. *N. Y. C. P.*, 13 Wend. 647; *Perry* v. *Chester*, 53 N. Y. 240; *Matter of Heinsheimer*, 214 N. Y. 361.)

*Ray M. Stanley* for respondents. The lien of an attorney for services is prior and superior to any right of offset.

(*Marshall* v. *Meech*, 51 N. Y. 140; *Peri* v. *N. Y. C. R. R. Co.*, 152 N. Y. 521; *Fischer-Hansen* v. *B. H. R. R. Co.*, 173 N. Y. 492; *Matter of Heinsheimer*, 214 N. Y. 361; *Barry* v. *T. A. R. R. Co.*, 87 App. Div. 443; *A. Ins. Co.* v. *Smith*, 112 App. Div. 840; *Webb* v. *Parker*, 130 App. Div. 92; *Kretsch* v. *Denofino*, 137 App. Div. 617; *Smith* v. *Cayuga Lake Cement Co.*, 107 App. Div. 524; *Matter of Steele*, 165 App. Div. 683; *Smith* v. *F. Nat. Bank*, 170 N. Y. Supp. 127.)

Cardozo, J. On October 27, 1916, the Peter A. Vogt Manufacturing Company recovered a judgment for a sum of money against Beecher and Smith, as executors of James C. Beecher, and against Smith individually. On October 28, 1916, the German-American Bank of Buffalo recovered a judgment for a sum of money against the Peter A. Vogt Manufacturing Company. The latter judgment was assigned to the executors of Beecher, who in turn assigned to Smith an undivided interest. This action is brought by the executors and Smith to set off the judgment which they own against the judgment which they owe. The defendants are the Peter A. Vogt Manufacturing Company, now insolvent, and the latter's attorneys. The set-off has been decreed, but subject to the attorneys' lien. We are to determine whether the lien should have been subordinated to the set-off.

The case revives the smouldering fires of an ancient judicial controversy. The beginnings may be traced to England. When judgment was to be set off against judgment, the King's Bench stood out for the superior right of its attorneys, and maintained the lien for costs (*Mitchell* v. *Oldfield*, 4 Term Rep. 123). The Common Pleas took the opposite view, and held the right of set-off superior to the lien (*Vaughan* v. *Davies*, 2 H. Bl. 440). The 93rd rule of Hilary Term, 2 Wm. IV (1832), gave the victory to the attorneys (*Davis* v. *Rees*, 1904, 2 K.

B. 435). In the meantime, the controversy had spread across the seas. In 1822, Chancellor KENT, in deciding the case of *Mohawk Bank* v. *Burrows* (6 Johns. Ch. 317, 321) adopted the practice of the English Common Pleas. His view was that only " the clear balance " which was " the result of the equity between the parties " was subject to the lien. He held with ROOK, J., in *Hall* v. *Ody* (2 B. & Pull. 28), that " the attorney looks, in the first instance, to the personal security of his client, and if beyond that he can get any further security into his hands, it is a mere casual advantage." Some years later, in 1829, and again in 1834, Chancellor WALWORTH refused to follow KENT, denounced the existing practice as unfair, and subordinated the set-off to the lien (*Dunkin* v. *Vandenbergh*, 1 Paige, 622; *Gridley* v. *Garrison*, 4 Paige, 647). But the triumph of the attorneys was short-lived. In 1836, the Court for the Correction of Errors reversed WALWORTH and followed KENT (*Nicoll* v. *Nicoll*, 16 Wend. 446), distinguishing, however, between set-off on summary motion and set-off " on bill filed or a trial at law." It was common practice then to set off judgments on motion (*Mason* v. *Knowlson*, 1 Hill, 218, 222; *Graves* v. *Woodbury*, 4 Hill, 559). The practice did not " at all depend on the statute of set-off," which was followed merely as " a rule of analogy," but " upon the jurisdiction of the courts over the parties and over their own process " (*People ex rel. Manning* v. *N. Y. Common Pleas*, 13 Wend. 649, 652; *Dunkin* v.*Vandenbergh, supra*, p. 624). On such applications, the courts had a discretion to grant or refuse relief. " But when we come to a bill filed or a trial at law, there is no discretion " (*Nicoll* v. *Nicoll, supra*, p. 448). In trials at law, the question was simply whether the set-off came within the statute. On bill in equity, the governing principle was the rule of analogy. " *Equitas sequitur legem*, whether the set-off be within the words or the spirit of the act " (*Nicoll* v. *Nicoll, supra*, p. 449). The

rule of analogy was thought to prohibit the preservation of the lien.

The decision in *Nicoll* v. *Nicoll,* though it aimed to settle the practice, did not wholly attain its purpose. The rule there announced was obeyed grudgingly, with frequent animadversions upon its inequity and rigor (*Fitch* v. *Baldwin,* Clarke's Ch. Rep. 433; *Roberts* v. *Carter,* 17 How. Pr. 341, 343; *Martin* v. *Kanouse,* 17 How. Pr. 146, 148; *Ward* v. *Wordsworth,* 1 E. D. Smith, 598). When discretion was not excluded, the lien sometimes prevailed (*Ward* v. *Wordsworth, supra; Martin* v. *Kanouse, supra*). As late as 1873, this court said that there was still " some confusion in the authorities " upon the question whether the lien or the right of set-off was superior in equity (*Perry* v. *Chester,* 53 N. Y. 240, 243). In the case in which that was said, special facts made it unnecessary to re-examine the general rule. They led, however, to a decision which points the way to a solution of the problem under the statutes now in force. The decision turned upon the fact that there had been an assignment by the client to the attorney of the costs to be recovered. This assignment of prospective costs, though its subject-matter was a fund not yet in existence, was held superior to the right of set-off after judgment as well in equity as at law. (See also: *Mackey* v. *Mackey,* 43 Barb. 58; *Graves* v. *Woodbury,* 4 Hill, 559; *Firmenich* v. *Bovee,* 1 Hun, 532, 535; *Zogbaum* v. *Parker,* 55 N. Y. 120.)

We think that amendments of the statute have put attorneys generally in the same position as the attorney whose lien was thus preserved in *Perry* v. *Chester.* At common law, the charging lien of the attorney did not arise until judgment, and, while the action was pending, might be defeated by an honest settlement (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.,* 71 N. Y. 443, 447, 450; *Fischer-Hansen* v. *B. H. R. R. Co.,* 173 N. Y. 492, 497). To-day he has a lien " upon his client's cause of action,"

which " attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come;" and the lien " cannot be affected by any settlement between the parties before or after judgment " (Code Civ. Pro. sec. 66, as amended by L. 1879, ch. 542; L. 1899, ch. 61; Judiciary Law, sec. 475; Consol. Laws, chap. 30; *Fischer-Hansen* v. *B. H. R. R. Co.*, *supra; Matter of Heinsheimer*, 214 N. Y. 361, 365). His position has become the same as that of an equitable assignee (*Marshall* v. *Meech*, 51 N. Y. 140, 143; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, *supra*, p. 449; *Ennis* v. *Curry*, 22 Hun, 584; *Lauer* v. *Dunn*, 115 N. Y. 405, 409). No longer is it true that his services up to judgment are solely on " the personal security of his client " and that anything beyond is " a mere casual advantage " (ROOK, J., in *Hall* v. *Ody*, *supra*, quoted by KENT, Ch., in *Mohawk Bank* v. *Burrows*, *supra*). From the beginning of the lawsuit, he stands as stood the attorney in *Perry* v. *Chester*, who held an equitable assignment, and thus gained the better right. In such circumstances, set-off of judgments, to the destruction of the lien, is neither within the words nor within the spirit (*Nicoll* v. *Nicoll*, *supra*) of the statutory law of counterclaim; and so the Appellate Divisions, though with little discussion of the earlier authorities, have repeatedly adjudged (*Barry* v. *Third Ave. R. R. Co.*, 87 App. Div. 543; *Smith* v. *Cayuga Lake Cement Co.*, 107 App. Div. 524; *Agricultural Ins. Co.* v. *Smith*, 112 App. Div. 840; *Webb* v. *Parker*, 130 App. Div. 92; *Kretsch* v. *Denofrio*, 137 App. Div. 617). It is not within the words, for the statute regulates the procedure before judgment, and not afterwards (Code Civ. Pro. secs. 501, 502). It is not within the spirit, for the statute in its whole framework evinces the purpose of the law-makers that the claims of assignees shall be protected against counterclaims arising from separate transactions and acquired with notice of the assignment (Code Civ.

Pro. sec. 502; *Seibert* v. *Dunn*, 216 N. Y. 237; *Matter of Nunez*, 226 N. Y. 246, 251). It follows, therefore, that equity, if it were to override the lien, would not be adhering by analogy to any rule obeyed by courts of law *in consimili casu.* The rule of analogy, even if we assume it to have pointed against the attorney in the days of *Nicoll* v. *Nicoll*, now points the other way.

With the grip of the statute thus released, there need be little hesitation in choosing the path to follow. It is true that relief in equity by setting off one judgment against another is granted, not of right, but in the exercise of discretion (*De Camp* v. *Thomson*, 159 N. Y. 444; *Alexander* v. *Durkee*, 112 N. Y. 655). The discretion, however, is not unregulated by principle. " The courts of law and equity follow the same *general* doctrines on the subject of set-off " (KENT, Ch., in *Duncan* v. *Lyon*, 3 Johns. Ch. 351, 358; *Dale* v. *Cooke*, 4 Johns. Ch. 11). Debts, to be applied against each other, must be mutual (*Sawyer* v. *Hoag*, 17 Wall. 610; *Libby* v. *Hopkins*, 104 U. S. 303; *Morris* v. *Windsor Trust Co.*, 213 N. Y. 27, 29). To be mutual, they must be due to and from the same persons in the same capacity (*Dale* v. *Cooke, supra*). Assignees are not to be held subject to the burdens of independent counterclaims accruing after the assignment (*Matter of Nunez, supra*). Equity relaxes these rules, and goes beyond the law, only when the departure is necessary " to prevent wrong and injustice " (*North Chicago Rolling Mill Co.* v. *St. Louis Ore & Steel Co.*, 152 U. S. 596, 615; *Gray* v. *Rollo*, 18 Wall. 629; *Scott* v. *Armstrong*, 146 U. S. 499, 507; *Goodwin* v. *Keney*, 49 Conn. 563, 569). Here, in this record, is no case of wrong and injustice triumphant if a set-off be refused. Attorneys have by their labor produced a judgment. They have done so in reliance upon the assurance of the statute that the judgment, and the cause of action back of it, shall secure their pay. The debtors seek by the belated purchase of another judgment to frustrate the hope and belie

the promise. Nothing that will move discretion to a departure from the rules of set-off as they prevail in courts of law, will be found in that endeavor.

The judgment should be affirmed with costs.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN, ANDREWS and ELKUS, JJ., concur.

Judgment affirmed.